Scott Edelsberg
CA Bar No. 330990
scott@edelsberglaw.com
**EDELSBERG LAW, P.A.**
20900 NE 30th Ave, Suite 417
Aventura, FL 33180
Telephone: 786-289-9469

*Attorneys for Plaintiff and Proposed Class*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **SHARONA PERKINS**, individually, and on behalf of all others similarly situated,<br><br>        Plaintiff,<br>vs.<br><br>**UNITED EDUCATION INSTITUTE D/B/A UEI COLLEGE,**<br><br>        Defendant. | Case No. _____<br><br>**CLASS ACTION COMPLAINT**<br>  1. **Negligence**<br>  2. **Breach of Implied Contract**<br>  3. **Invasion of Privacy**<br>  4. **Breach of Fiduciary Duty**<br>  5. **Violation of the California Unfair Competition Law**<br>  6. **Violation of the California Consumer Records Act**<br>  7. **Violation of the California Consumer Privacy Act**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Sharona Perkins, individually, and on behalf of all others similarly situated, brings this Class Action Complaint ("Complaint") against United Education Institute d/b/a UEI College ("UEI" or "Defendant"), to obtain damages, restitution, and injunctive relief for the Class, as defined below, from Defendant. Plaintiff makes the following allegations on information and belief, except as to her own actions, which are made on personal knowledge, the investigation of counsel, and the facts that are a matter of public record.

**INTRODUCTION**

1.      This class action arises out of the recent targeted ransomware attack and data breach ("Data Breach") on Defendant's network that resulted in unauthorized access to the highly sensitive data. As a result of the Data Breach, Class Members suffered ascertainable losses in the form of the benefit of their bargain, out-of-pocket expenses, and the value of their time reasonably incurred to remedy or mitigate the effects of the attack, emotional distress, and the present risk of imminent harm caused by the compromise of their sensitive personal information.

2.      Defendant requires prospective students, applicants, employees, and other individuals who are interested in its services to provide Defendant with sensitive data in Defendant's ordinary course of business.

3.      Plaintiff and Class Members provided Defendant with their highly sensitive personally identifiable information ("PII" or "Private Information") in connection with the services Defendant provides.

4.      Upon information and belief, the Private Information Plaintiff and Class Members provided to Defendant, included but is not limited to names, addresses, Social Security numbers, dates of birth, driver's licenses or other government identifications, and other sensitive data.

5.      Upon information and belief, up to and through June 2026, Defendant obtained the Private Information of Plaintiff and Class Members and stored that Private Information, unencrypted, in an Internet-accessible environment on Defendant's network, from which unauthorized actors used an extraction tool to retrieve sensitive Private Information belonging to Plaintiff and Class Members.

CLASS ACTION COMPLAINT

6.      Plaintiff's and Class Members' Private Information—which was entrusted to Defendant—was compromised and unlawfully accessed due to the Data Breach.

7.      On May 29, 2026, Defendant suffered a ransomware attack, causing the exfiltration of Plaintiff's and Class Members' Private Information. [1]

8.      On May 30, 2026, the notorious ransomware cybercriminal group Termite claimed responsibility for the Data Breach and posted a screenshot of a sample of the leaked data. [2]

9.      Upon information and belief, Plaintiff's Private Information is now available on the dark web as a result of the Data Breach.

10.     Plaintiff brings this class action lawsuit on behalf of those similarly situated to address Defendant's inadequate safeguarding of Plaintiff's and Class Members' Private Information that Defendant collected and maintained, and for Defendant's failure to provide timely and adequate notice to Plaintiff and other Class Members that their Private Information had been subject to the unauthorized access of an unknown, unauthorized party.

11.     Defendant maintained the Private Information in a negligent and/or reckless manner. In particular, the Private Information was maintained on Defendant's computer system and network in a condition vulnerable to cyberattacks. Upon information and belief, the mechanism of the cyberattack and potential for improper disclosure of Plaintiff's and Class Members' Private Information was a known risk to Defendant, and thus Defendant was on notice that failing to take steps necessary to secure the Private Information from those risks left that property in a dangerous condition.

12.     In addition, upon information and belief, Defendant and its employees failed to properly monitor the computer network, IT systems, and integrated service

---

[1] https://www.ransomware.live/id/VUVJIENvbGxlZ2VAdGVybWl0ZQ (last accessed June 5, 2026)

[2] *Id.*

CLASS ACTION COMPLAINT

that housed Plaintiff's and Class Members' Private Information.

13.     Plaintiff's and Class Members' identities are now at risk because of Defendant's negligent conduct because the Private Information that Defendant collected and maintained is now in the hands of malicious cybercriminals. The risks to Plaintiff and Class Members will remain for their respective lifetimes.

14.     Defendant failed to provide timely, accurate and adequate notice to Plaintiff and Class Members. Plaintiff and Class Members' knowledge about the Private Information Defendant lost, as well as precisely what type of information was unencrypted and in the possession of unknown third parties, was unreasonably delayed by Defendant's failure to warn impacted persons immediately upon learning of the Data Breach.

15.     Defendant deprived Plaintiff and Class Members of the earliest opportunity to mitigate their damages caused by the Data Breach by failing to immediately notify affected individuals.

16.     To date, Defendant has not notified Plaintiff and Class Members of the Data Breach, or contacted or offered any remediation to the victims of this Data Breach.

17.     Indeed, armed with the Private Information accessed in the Data Breach, data thieves can commit a variety of crimes including opening new financial accounts in Class Members' names, taking out loans in Class Members' names, using Class Members' names to obtain medical services, using Class Members' information to target other phishing and hacking intrusions using Class Members' information to obtain government benefits, filing fraudulent tax returns using Class Members' information, obtaining driver's licenses in Class Members' names but with another person's photograph, and giving false information to police during an arrest.

18.     As a result of the Data Breach, Plaintiff and Class Members have been exposed to a present, heightened and imminent risk of fraud and identity theft. Plaintiff and Class Members must now closely monitor their financial accounts to guard against

CLASS ACTION COMPLAINT

identity theft for the rest of their lives.

19.    Plaintiff and Class Members may also incur out of pocket costs for purchasing credit monitoring services, credit freezes, credit reports, or other protective measures to deter and detect identity theft.

20.    By her Complaint, Plaintiff seeks to remedy these harms on behalf of himself and all similarly situated individuals whose Private Information was accessed during the Data Breach.

21.    Accordingly, Plaintiff brings claims on behalf of himself and the Class for: (i) negligence, (ii) breach of implied contract; (iii) invasion of privacy; and (iv) breach of fiduciary duty, (vi) violation of the California Unfair Competition Law, (vi) violation of the California Consumer Records Act, and (vii) violation of the California Consumer Privacy Act. Through these claims, Plaintiff seeks, *inter alia*, damages and injunctive relief, including improvements to Defendant's data security systems and integrated services, future annual audits, and adequate credit monitoring services.

## PARTIES

22.    Plaintiff is, and at all times mentioned herein was, an individual resident and citizen of the State of Highland, California.

23.    Defendant United Education Institute d/b/a UEI College is a corporation organized under the laws of California with its headquarters and principal place of business located at 16485 Laguna Canyon Road, Suite 300, Irvine, CA 92618.

## JURISDICTION AND VENUE

24.    This Court has subject matter jurisdiction over this action under 28 U.S.C.§ 1332(d) because this is a class action wherein the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one member of the class is a citizen of a state different from Defendant.

CLASS ACTION COMPLAINT

25.    This Court has personal jurisdiction over Defendant because its principal place of business is in this District, it regularly conducts business in California, and the acts and omissions giving rise to Plaintiff's claims occurred in and emanated from this District.

26.    Venue is proper under 18 U.S.C § 1391(b)(1) because Defendant's principal place of business is in this District.

## BACKGROUND FACTS

**A.    Defendant's Businesses**

27.    UEI College is a licensed and accredited institution of higher learning known as a career college.[3]

28.    In connection with the services Defendant provides, Defendant requires Plaintiff and Class Members to provide it with highly sensitive personal information.

29.    At the time of the Data Breach, Defendant maintained the Private Information of Plaintiff and Class Members, including but not limited to name, address, Social Security number, date of birth, driver's license or other government identification, and information related to mortgage loan applications and servicing.

30.    Plaintiff and Class Members directly or indirectly entrusted Defendant with sensitive and confidential Private Information, which includes information that is static, does not change, and can be used to commit myriad financial crimes.

31.    Because of the highly sensitive and personal nature of the information Defendant acquires, stores, and has access to, Defendant, upon information and belief, promised to, among other things: keep Private Information private; comply with industry standards related to data security and Private Information; inform individuals of their legal duties and comply with all federal and state laws protecting Private Information; only use and release Private Information for reasons that relate to the services Defendant provides; and provide adequate notice to impacted individuals if

---

[3] https://www.uei.edu/about-us/(last accessed June 5, 2026)

CLASS ACTION COMPLAINT

their Private Information is disclosed without authorization, including through its privacy policy disclosures.[4]

32.   By obtaining, collecting, using, and deriving a benefit from Plaintiff's and Class Members' Private Information, Defendant assumed legal and equitable duties and knew or should have known that it was responsible for protecting Plaintiff's and Class Members' Private Information from unauthorized disclosure.

33.   Plaintiff and the Class Members have taken reasonable steps to maintain the confidentiality of their Private Information.

34.   Plaintiff and the Class Members relied on Defendant to implement and follow adequate data security policies and protocols, to keep their Private Information confidential and securely maintained, to use such Private Information solely for business purposes, and to prevent the unauthorized disclosures of the Private Information.

**B.   Defendant Fails to Safeguard Consumer Private Information**

35.   On or around May 29, 2026, Defendant suffered a ransomware attack on its systems.[5]

36.   The ransomware group Termite claimed responsibility for the attack.[6]

37.   To date, Defendant has not provided any notice to affected individuals, or released any statements acknowledging the Data Breach.

38.   It is likely the Data Breach was targeted at Defendant due to its status as

[4] See Privacy Policy, available at https://www.uei.edu/privacy-policy-terms/#4 ("We do not use or disclose Sensitive Personal Information for any business purposes other than as permitted by law, including to providing good and services, verifying your information, processing payments, providing financial aid, ensuring security and integrity, and/or as permitted by further regulations… We disclose your Personal Information to third parties only in the ways that are described in this Policy and with our business partners, suppliers and sub-contractors in order to provide you with our Services and perform any contract we enter into with them or you.") (last accessed June 5, 2026)

[5] https://www.ransomware.live/id/VUVJIENvbGxlZ2VAdGVybWl0ZQ (last accessed June 5, 2026)

[6] *Id.*

CLASS ACTION COMPLAINT

an educational institution that collects, creates, and maintains sensitive Private Information.

39.     Upon information and belief, the cyberattack was expressly designed to gain access to private and confidential data of specific individuals, including (among other things) the Private Information of Plaintiff and the Class Members.

40.     Upon information and belief, it is plausible and likely that Plaintiff's Private Information was stolen in the Data Breach. Plaintiff further believes her Private Information was likely subsequently sold on the dark web following the Data Breach, as that is the *modus operandi* of cybercriminals.

41.     To be clear – there are numerous issues with Defendant's Data Breach, but many deficiencies in the way Defendant has handled the Data Breach exacerbate the circumstances for victims of the Data Breach: (1) to date, Defendant has failed to notify Plaintiff and Class Members of the Data Breach; (2) Plaintiff and Class Members do not know how the breach itself occurred; (3) Defendant has not provided any mechanism for Plaintiff and Class Members to report any misuse as a result of the Data Breach; (4) Plaintiff and Class Members do not know whether the threat was neutralized, leaving them to worry about the security of their Private Information. All of this information is vital to victims of a data breach, let alone a data breach of this magnitude due to the sensitivity and wide array of information compromised in this specific breach.

42.     Defendant had a duty to adopt reasonable measures to protect Plaintiff's and Class Members' Private Information from involuntary disclosure to third parties.

43.     Because of the Data Breach, data thieves were able to gain access to Defendant's private systems on or around May 29, 2026, and were able to compromise, access, and acquire the protected Private Information of Plaintiff and Class Members.

44.     Defendant had obligations created by contract, industry standards, common law, and its own promises and representations made to Plaintiff and Class

CLASS ACTION COMPLAINT

Members to keep their Private Information confidential and to protect them from unauthorized access and disclosure.

45.   Plaintiff and the Class Members reasonably relied (directly or indirectly) on Defendant's sophistication and representations to keep their sensitive Private Information confidential; to maintain proper system security; to use this information for business purposes only; and to make only authorized disclosures of their Private Information.

46.   Plaintiff's and Class Members' unencrypted, unredacted Private Information was compromised due to Defendant's negligent and/or careless acts and omissions, and due to the utter failure to protect Class Members' Private Information. Criminal hackers obtained their Private Information because of its value in exploiting and stealing the identities of Plaintiff and Class Members. The risks to Plaintiff and Class Members will remain for their respective lifetimes.

**C.   The Data Breach was a Foreseeable Risk and Defendant was on Notice**

47.   Defendant's data security obligations were particularly important given the substantial increase in cyberattacks and/or data breaches in industries holding significant amounts of Private Information preceding the date of the breach.

48.   In light of recent high profile data breaches at other educational institutions, Defendant knew or should have known that their electronic records and Private Information they maintained would be targeted by cybercriminals and ransomware attack groups.

49.   Defendant knew or should have known that these attacks were common and foreseeable.

50.   In 2021, a record 1,862 data breaches occurred, resulting in approximately 293,927,708 sensitive records being exposed, a 68% increase from 2020.[7] The 330 reported breaches reported in 2021 exposed nearly 30 million sensitive records

[7]   *See* 2021 Data Breach Annual Report (ITRC, Jan. 2022) (available at https://notified.idtheftcenter.org/s/), at 6. (last accessed June 5, 2026)

CLASS ACTION COMPLAINT

(28,045,658), compared to only 306 breaches that exposed nearly 10 million sensitive records (9,700,238) in 2020.[8]

51.    Therefore, the increase in such attacks, and attendant risk of future attacks, was widely known to the public and to anyone in Defendant's industry, including Defendant.

**D.    Defendant Fails to Comply with FTC Guidelines**

52.    The Federal Trade Commission ("FTC") has promulgated numerous guides for businesses which highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.

53.    In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established cyber-security guidelines for businesses. The guidelines note that businesses should protect the personal customer information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand its network's vulnerabilities; and implement policies to correct any security problems.[9] The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone is attempting to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.[10]

54.    The FTC further recommends that companies not maintain Private Information longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested

---

[8] *Id.*
[9] *Protecting Personal Information: A Guide for Business*, Federal Trade Commission (2016). Available at https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf (last accessed June 5, 2026)
[10] *Id.*

CLASS ACTION COMPLAINT

methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

55. The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

56. These FTC enforcement actions include actions against educational institutions like Defendant.

57. Defendant failed to properly implement basic data security practices.

58. Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to customers and other impacted individuals' Private Information constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

59. Defendant was at all times fully aware of their obligation to protect the Private Information. Defendant was also aware of the significant repercussions that would result from their failure to do so.

**E.    Defendant Could Have Prevented the Data Breach**

60. Defendant did not use reasonable security procedures and practices appropriate to the nature of the sensitive information they were maintaining for Plaintiff and Class Members, causing the exposure of Private Information, such as encrypting or redacting the information or deleting it when it is no longer needed.

61. Defendant could have prevented this Data Breach by, among other things, properly encrypting, redacting, or otherwise protecting their equipment and computer

11

CLASS ACTION COMPLAINT

files containing Private Information.

62.　To prevent and detect cyber-attacks and/or ransomware attacks, Defendant could and should have implemented, as recommended by the United States Government, the following measures:

- Implement an awareness and training program. Because end users are targets, employees and individuals should be aware of the threat of ransomware and how it is delivered.

- Enable strong spam filters to prevent phishing emails from reaching the end users and authenticate inbound email using technologies like Sender Policy Framework (SPF), Domain Message Authentication Reporting and Conformance (DMARC), and DomainKeys Identified Mail (DKIM) to prevent email spoofing.

- Scan all incoming and outgoing emails to detect threats and filter executable files from reaching end users.

- Configure firewalls to block access to known malicious IP addresses.

- Patch operating systems, software, and firmware on devices. Consider using a centralized patch management system.

- Set anti-virus and anti-malware programs to conduct regular scans automatically.

- Manage the use of privileged accounts based on the principle of least privilege: no users should be assigned administrative access unless absolutely needed; and those with a need for administrator accounts should only use them when necessary.

- Configure access controls—including file, directory, and network share permissions—with least privilege in mind. If a user only needs to read specific files, the user should not have write access to those files, directories, or shares.

- Disable macro scripts from office files transmitted via email. Consider using Office Viewer software to open Microsoft Office files transmitted via email instead of full office suite applications.

- Implement Software Restriction Policies (SRP) or other controls to prevent programs from executing from common ransomware locations, such as

12

CLASS ACTION COMPLAINT

temporary folders supporting popular Internet browsers or compression/decompression programs, including the AppData/LocalAppData folder.

- Consider disabling Remote Desktop protocol (RDP) if it is not being used.

- Use application whitelisting, which only allows systems to execute programs known and permitted by security policy.

- Execute operating system environments or specific programs in a virtualized environment.

- Categorize data based on organizational value and implement physical and logical separation of networks and data for different organizational units.[11]

63.    To prevent and detect cyber-attacks or ransomware attacks, Defendant could and should have implemented, as recommended by the Microsoft Threat Protection Intelligence Team, the following measures:

**Secure Internet-Facing Assets**

- Apply latest security updates
- Use threat and vulnerability management
- Perform regular audit; remove privileged credentials;

**Thoroughly investigate and remediate alerts**

- Prioritize and treat commodity malware infections as potential full compromise;

**Include IT Pros in security discussions**

- Ensure collaboration among [security operations], [security admins], and [information technology] admins to configure servers and other endpoints securely;

**Build credential hygiene**

---

[11] *Id.* at 3-4.

13

CLASS ACTION COMPLAINT

-     Use [multifactor authentication] or [network level authentication] and use strong, randomized, just-in-time local admin passwords;

**Apply principle of least-privilege**

-     Monitor for adversarial activities
-     Hunt for brute force attempts
-     Monitor for cleanup of Event Logs
-     Analyze logon events;

**Harden infrastructure**

-     Use Windows Defender Firewall
-     Enable tamper protection
-     Enable cloud-delivered protection
-     Turn on attack surface reduction rules and [Antimalware Scan Interface] for Office[Visual Basic for Applications].[12]

64. Given that Defendant was storing the Private Information of Plaintiff and Class Members, Defendant could and should have implemented all of the above measures to prevent and detect cyberattacks.

65. The occurrence of the Data Breach indicates that Defendant failed to adequately implement one or more of the above measures to prevent cyberattacks, resulting in the Data Breach and data thieves acquiring and accessing the Private Information of Plaintiff and Class Members.

**F.**     **Defendant Acquires, Collects, And Stores Its Patients' Private Information**

66. Defendant acquires, collects, and stores a massive amount of Private Information in connection with providing its services and conducting its business.

67. In connection with the services Defendant provides, Defendant requires that Plaintiff and Class Members entrust it with highly sensitive personal information.

---

[12] *See* Human-operated ransomware attacks: A preventable disaster (Mar 5, 2020), *available at:* https://www.microsoft.com/security/blog/2020/03/05/human-operated-ransomware-attacks-a-preventable-disaster/ (last accessed June 5, 2026).

CLASS ACTION COMPLAINT

68.    By obtaining, collecting, and using Plaintiff's and Class Members' Private Information, Defendant assumed legal and equitable duties and knew or should have known that it was responsible for protecting Plaintiff's and Class Members' Private Information from disclosure.

69.    Plaintiff and the Class Members have taken reasonable steps to maintain the confidentiality of their Private Information and would not have entrusted it to Defendant absent a promise to safeguard that information.

70.    Upon information and belief, in the course of collecting Private Information from Plaintiff and Class Members, Defendant promised to provide confidentiality and adequate security for their data through its applicable privacy policy and through other disclosures in compliance with statutory privacy requirements.

71.    Plaintiff and the Class Members relied on Defendant to keep their Private Information confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information.

**G.    Defendant Fails to Comply with Industry Standards**

72.    As shown above, experts studying cyber security routinely identify educational institutions as being particularly vulnerable to cyberattacks because of the value of the Private Information which they collect and maintain.

73.    Several best practices have been identified that at a minimum should be implemented by educational institutions like Defendant, including but not limited to: educating all employees; strong passwords; multi-layer security, including firewalls, anti-virus, and anti-malware software; encryption, making data unreadable without a key; multi-factor authentication; backup data; and limiting which employees can access sensitive data.

74.    Other best cybersecurity practices that are standard in the education industry include installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems;

15
CLASS ACTION COMPLAINT

setting up network systems such as firewalls, switches and routers; monitoring and protection of physical security systems; protection against any possible communication system; training staff regarding critical points.

75.    Defendant failed to meet the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework Version 1.1 (including without limitation PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

76.    These foregoing frameworks are existing and applicable industry standards in the education industry, and Defendant failed to comply with these accepted standards, thereby opening the door to the cyber incident and causing the data breach.

## H.    Defendant's Breach

77.    Defendant breached its obligations to Plaintiff and Class Members and/or was otherwise negligent and reckless because it failed to properly maintain and safeguard its computer systems and website's application flow. Defendant's unlawful conduct includes, but is not limited to, the following acts and/or omissions:

        a.    failing to maintain an adequate data security system to reduce the risk of data breaches and cyber-attacks;

        b.    failing to adequately protect Private Information;

        c.    failing to properly monitor their own data security systems for existing intrusions;

        d.    failing to ensure that their vendors with access to their computer systems and data employed reasonable security procedures;

        e.    failing to ensure the confidentiality and integrity of electronic Private Information it created, received, maintained, and/or transmitted;

CLASS ACTION COMPLAINT

f.      failing to implement technical policies and procedures for electronic information systems that maintain electronic Private Information to allow access only to those persons or software programs that have been granted access rights;

g.      failing to implement policies and procedures to prevent, detect, contain, and correct security violations;

h.      failing to implement procedures to review records of information system activity regularly, such as audit logs, access reports, and security incident tracking reports;

i.      failing to protect against reasonably anticipated threats or hazards to the security or integrity of electronic Private Information;

j.      failing to train all members of their workforces effectively on the policies and procedures regarding Private Information;

k.      failing to render the electronic Private Information it maintained unusable, unreadable, or indecipherable to unauthorized individuals;

l.      failing to comply with FTC guidelines for cybersecurity, in violation of Section 5 of the FTC Act;

m.      failing to adhere to industry standards for cybersecurity as discussed above; and,

n.      otherwise breaching their duties and obligations to protect Plaintiff's and Class Members' Private Information.

78.    Defendant negligently and unlawfully failed to safeguard Plaintiff's and Class Members' Private Information by allowing cyberthieves to access Defendant's online insurance application flow, which provided unauthorized actors with unsecured and unencrypted Private Information.

79.    Accordingly, as outlined below, Plaintiff and Class Members now face a

17

CLASS ACTION COMPLAINT

present, increased risk of fraud and identity theft. In addition, Plaintiff and the Class Members also lost the benefit of the bargain they made with Defendant.

## I.    Value Of Private Information

80.    The Federal Trade Commission ("FTC") defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority."[13] The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number."[14]

81.    The Private Information of individuals remains of high value to criminals, as evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity credentials.[15]

82.    For example, Personal Information can be sold at a price ranging from $40 to $200.[16] Criminals can also purchase access to entire company data breaches from $900 to $4,500.[17]

83.    Of course, a stolen Social Security number – standing alone – can be used to wreak untold havoc upon a victim's personal and financial life.  The popular person privacy and credit monitoring service LifeLock by Norton notes "Five Malicious Ways a Thief Can Use Your Social Security Number," including 1) Financial Identity Theft

---

[13] 17 C.F.R. § 248.201 (2013).

[14] *Id.*

[15] *Your personal data is for sale on the dark web. Here's how much it costs,* Digital Trends, Oct. 16, 2019, *available at*: https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs/ (last accessed June 5, 2026).

[16] *Here's How Much Your Personal Information Is Selling for on the Dark Web*, Experian, Dec. 6, 2017, *available at*: https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web/ (last accessed June 5, 2026).

[17] *In the Dark*, VPNOverview, 2019, *available at*: https://vpnoverview.com/privacy/anonymous-browsing/in-the-dark/ (last accessed June 5, 2026).

18

that includes "false applications for loans, credit cards or bank accounts in your name or withdraw money from your accounts, and which can encompass credit card fraud, bank fraud, computer fraud, wire fraud, mail fraud and employment fraud; 2) Government Identity Theft, including tax refund fraud; 3) Criminal Identity Theft, which involves using someone's stolen Social Security number as a "get out of jail free card;" 4) Medical Identity Theft, and 5) Utility Fraud.

84.    It is little wonder that courts have dubbed a stolen Social Security number as the "gold standard" for identity theft and fraud. Social Security numbers, which upon information and belief, were compromised for Class Members in the Data Breach, are among the worst kind of Private Information to have stolen because they may be put to a variety of fraudulent uses and are difficult for an individual to change.

85.    According to the Social Security Administration, each time an individual's Social Security number is compromised, "the potential for a thief to illegitimately gain access to bank accounts, credit cards, driving records, tax and employment histories and other private information increases." [18] Moreover, "[b]ecause many organizations still use SSNs as the primary identifier, exposure to identity theft and fraud remains."[19]

86.    The Social Security Administration stresses that the loss of an individual's Social Security number, which upon information and belief, was experienced by Plaintiff and some Class Members, can lead to identity theft and extensive financial fraud:

> A dishonest person who has your Social Security number can use it to get other personal information about you. Identity thieves can use your number and your good credit to apply for more credit in your name. Then, they use the credit cards and don't pay the bills, it damages your credit.

---

[18]                                                                      *See* https://www.ssa.gov/phila/ProtectingSSNs.htm#:~:text=An%20organization's%20collection%20and%20use,and%20other%20private%20information%20increases. (last accessed June 5, 2026).

[19] *Id.*

19

CLASS ACTION COMPLAINT

> You may not find out that someone is using your number until you're turned down for credit, or you begin to get calls from unknown creditors demanding payment for items you never bought. Someone illegally using your Social Security number and assuming your identity can cause a lot of problems.[20]

87.     In fact, "[a] stolen Social Security number is one of the leading causes of identity theft and can threaten your financial health."[21] "Someone who has your SSN can use it to impersonate you, obtain credit and open bank accounts, apply for jobs, steal your tax refunds, get medical treatment, and steal your government benefits."[22]

88.     What's more, it is no easy task to change or cancel a stolen Social Security number. An individual cannot obtain a new Social Security number without significant paperwork and evidence of actual misuse. In other words, preventive action to defend against the possibility of misuse of a Social Security number is not permitted; an individual must show evidence of actual, ongoing fraud activity to obtain a new number.

89.     Even then, a new Social Security number may not be effective. According to Julie Ferguson of the Identity Theft Resource Center, "[t]he credit bureaus and banks are able to link the new number very quickly to the old number, so all of that old bad information is quickly inherited into the new Social Security number."[23]

90.     For these reasons, some courts have referred to Social Security numbers as the "gold standard" for identity theft. *Portier v. NEO Tech. Sols.*, No. 3:17-CV-30111, 2019 WL 7946103, at *12 (D. Mass. Dec. 31, 2019) ("Because Social Security

---

[20] Social Security Administration, *Identity Theft and Your Social Security Number*, *available at*: https://www.ssa.gov/pubs/EN-05-10064.pdf (last accessed June 5, 2026).
[21] *See* https://www.equifax.com/personal/education/identity-theft/articles/-/learn/social-security-number-identity-theft/(last accessed June 5, 2026).

[22] *See* https://www.investopedia.com/terms/s/ssn.asp(last accessed June 5, 2026).

[23] Bryan Naylor, *Victims of Social Security Number Theft Find It's Hard to Bounce Back*, NPR (Feb. 9, 2015), *available at*: http://www.npr.org/2015/02/09/384875839/data-stolen-by-anthem-s-hackers-has-millionsworrying-about-identity-theft (last accessed June 5, 2026).

CLASS ACTION COMPLAINT

numbers are the gold standard for identity theft, their theft is significant . . . . Access to Social Security numbers causes long-lasting jeopardy because the Social Security Administration does not normally replace Social Security numbers."), report and recommendation adopted, No. 3:17-CV-30111, 2020 WL 877035 (D. Mass. Jan. 30, 2020); *see also McFarlane v. Altice USA, Inc.*, 2021 WL 860584, at *4 (citations omitted) (S.D.N.Y. Mar. 8, 2021) (the court noted that Plaintiff' Social Security numbers are: arguably "the most dangerous type of personal information in the hands of identity thieves" because it is immutable and can be used to "impersonat[e] [the victim] to get medical services, government benefits, ... tax refunds, [and] employment." . . . Unlike a credit card number, which can be changed to eliminate the risk of harm following a data breach, "[a] social security number derives its value in that it is immutable," and when it is stolen it can "forever be wielded to identify [the victim] and target him in fraudulent schemes and identity theft attacks.")

91.    Similarly, the California state government warns patients that: "[o]riginally, your Social Security number (SSN) was a way for the government to track your earnings and pay you retirement benefits. But over the years, it has become much more than that. It is the key to a lot of your personal information. With your name and SSN, an identity thief could open new credit and bank accounts, rent an apartment, or even get a job."[24]

92.    Based on the foregoing, upon information and belief, the information compromised in the Data Breach is significantly more valuable than the loss of, for example, credit card information in a retailer data breach because, there, victims can cancel or close credit and debit card accounts. Upon information and belief, the information compromised in this Data Breach is impossible to "close" and difficult, if not impossible, to change—Social Security numbers, dates of birth, and names.

---

[24] *See* https://oag.ca.gov/idtheft/facts/your-ssn (last accessed June 5, 2026).

21

CLASS ACTION COMPLAINT

93.    The fraudulent activity resulting from the Data Breach may not come to light for years. There may be a time lag between when harm occurs versus when it is discovered, and also between when Private Information is stolen and when it is used. According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[25]

94.    Plaintiff and Class Members now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights. The Class is incurring and will continue to incur such damages in addition to any fraudulent use of their Private Information.

**J.    Data Breaches Increase Victims' Risk of Identity Theft**

95.    The unencrypted Private Information of Class Members will end up for sale on the dark web as that is the *modus operandi* of hackers.

96.    Unencrypted Private Information may also fall into the hands of companies that will use the detailed Private Information for targeted marketing without the approval of Plaintiff and Class Members. Simply put, unauthorized individuals can easily access the Private Information of Plaintiff and Class Members.

97.    The link between a data breach and the risk of identity theft is simple and well established. Criminals acquire and steal Private Information to monetize the information. Criminals monetize the data by selling the stolen information on the black

---

[25] *Report to Congressional Requesters*, GAO, at 29 (June 2007), *available at:* https://www.gao.gov/assets/gao-07-737.pdf (last accessed June 5, 2026).

CLASS ACTION COMPLAINT

market to other criminals who then utilize the information to commit a variety of identity theft related crimes discussed below.

98.     Plaintiff's and Class Members' Private Information is of great value to hackers and cyber criminals, and the data stolen in the Data Breach has been used and will continue to be used in a variety of sordid ways for criminals to exploit Plaintiff and Class Members and to profit off their misfortune.

99.     Due to the risk of one's Social Security number being exposed, state legislatures have passed laws in recognition of the risk: "[t]he social security number can be used as a tool to perpetuate fraud against a person and to acquire sensitive personal, financial, medical, and familial information, the release of which could cause great financial or personal harm to an individual. While the social security number was intended to be used solely for the administration of the federal Social Security System, over time this unique numeric identifier has been used extensively for identity verification purposes[.]"[26]

100.    Moreover, "SSNs have been central to the American identity infrastructure for years, being used as a key identifier[.] . . . U.S. banking processes have also had SSNs baked into their identification process for years. In fact, SSNs have been the gold standard for identifying and verifying the credit history of prospective customers."[27]

101.    "Despite the risk of fraud associated with the theft of Social Security numbers, just five of the nation's largest 25 banks have stopped using the numbers to verify a patient's identity after the initial account setup[.]"[28] Accordingly, since Social

---

[26] *See* N.C. Gen. Stat. § 132-1.10(1).

[27] *See* https://www.americanbanker.com/opinion/banks-need-to-stop-relying-on-social-security-numbers(last accessed June 5, 2026).

[28] *See* https://archive.nytimes.com/bucks.blogs.nytimes.com/2013/03/20/just-5-banks-prohibit-use-of-social-security-numbers/(last accessed June 5, 2026).

CLASS ACTION COMPLAINT

Security numbers are frequently used to verify an individual's identity after logging onto an account or attempting a transaction, "[h]aving access to your Social Security number may be enough to help a thief steal money from your bank account"[29]

102.   One such example of criminals piecing together bits and pieces of compromised Private Information for profit is the development of "Fullz" packages.[30]

103.   With "Fullz" packages, cyber-criminals can cross-reference two sources of Private Information to marry unregulated data available elsewhere to criminally stolen data with an astonishingly complete scope and degree of accuracy in order to assemble complete dossiers on individuals.

104.   The development of "Fullz" packages means here that the stolen Private Information from the Data Breach can easily be used to link and identify it to Plaintiff's and Class Members' phone numbers, email addresses, and other unregulated sources and identifiers. In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the Private Information that was exfiltrated in the Data Breach, criminals may still easily create a Fullz package and

---

[29]   *See*   https://www.credit.com/blog/5-things-an-identity-thief-can-do-with-your-social-security-number-108597/(last accessed June 5, 2026).

[30] "Fullz" is fraudster speak for data that includes the information of the victim, including, but not limited to, the name, address, credit card information, social security number, date of birth, and more. As a rule of thumb, the more information you have on a victim, the more money that can be made off of those credentials. Fullz are usually pricier than standard credit card credentials, commanding up to $100 per record (or more) on the dark web. Fullz can be cashed out (turning credentials into money) in various ways, including performing bank transactions over the phone with the required authentication details in-hand. Even "dead Fullz," which are Fullz credentials associated with credit cards that are no longer valid, can still be used for numerous purposes, including tax refund scams, ordering credit cards on behalf of the victim, or opening a "mule account" (an account that will accept a fraudulent money transfer from a compromised account) without the victim's knowledge. *See, e.g.,* Brian Krebs, *Medical Records for Sale in Underground Stolen From Texas Life Insurance Firm*, Krebs on Security (Sep. 18, 2014), https://krebsonsecuritv.eom/2014/09/medical-records-for-sale-in-underground-stolen-from-texas-life-insurance-](https://krebsonsecuritv.eom/2014/09/medical-records-for-sale-in-underground-stolen-from-texas-life-insurance-finn/ (last accessed June 5, 2026).

CLASS ACTION COMPLAINT

sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over.

105. The existence and prevalence of "Fullz" packages means that the Private Information stolen from the data breach can easily be linked to the unregulated data (like contact information) of Plaintiff and the other Class Members.

106. Thus, even if certain information (such as contact information) was not stolen in the data breach, criminals can still easily create a comprehensive "Fullz" package.

*107*. Then, this comprehensive dossier can be sold—and then resold in perpetuity—to crooked operators and other criminals (like illegal and scam telemarketers).

**K. Loss Of Time To Mitigate Risk Of Identity Theft & Fraud**

108. As a result of the recognized risk of identity theft, when a Data Breach occurs, the reasonable person is expected to take steps and spend time to address the dangerous situation, learn about the breach, and otherwise mitigate the risk of becoming a victim of identity theft of fraud. Failure to spend time taking steps to review accounts or credit reports could expose the individual to greater financial harm – yet, the resource and asset of time has been lost.

109. Plaintiff's and Class Members' time is highly valuable and irreplaceable, and accordingly, Plaintiff and Class Members suffered actual injury and damages in the form of lost time that they spent on mitigation activities in response to the Data Breach.

110. Plaintiff and Class Members have spent, and will spend additional time in the future, on a variety of prudent actions, such as researching and verifying the legitimacy of the Data Breach, signing up for credit monitoring insurance services, and placing locks on their credit accounts. Accordingly, the Data Breach has caused Plaintiff and Class Members to suffer actual injury in the form of lost time—which cannot be recaptured—spent on mitigation activities.

CLASS ACTION COMPLAINT

111.   Plaintiff's mitigation efforts are consistent with the U.S. Government Accountability Office that released a report in 2007 regarding data breaches ("GAO Report") in which it noted that victims of identity theft will face "substantial costs and time to repair the damage to their good name and credit record."[31]

112.   Plaintiff's mitigation efforts are also consistent with the steps that FTC recommends that data breach victims take several steps to protect their personal and financial information after a data breach, including: contacting one of the credit bureaus to place a fraud alert (consider an extended fraud alert that lasts for seven years if someone steals their identity), reviewing their credit reports, contacting companies to remove fraudulent charges from their accounts, placing a credit freeze on their credit, and correcting their credit reports.[32]

113.   And for those Class Members who experience actual identity theft and fraud, the United States Government Accountability Office released a report in 2007 regarding data breaches ("GAO Report") in which it noted that victims of identity theft will face "substantial costs and time to repair the damage to their good name and credit record."[4]

**L. Diminution of Value of Private Information**

114.   Private Information is a valuable property right.[33] Its value is axiomatic, considering the value of Big Data in corporate America and the consequences of cyber thefts include heavy prison sentences. Even this obvious risk to reward analysis illustrates beyond doubt that Private Information has considerable market value.

---

[31] *See* United States Government Accountability Office, GAO-07-737, Personal Information: Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown (June 2007), https://www.gao.gov/new.items/d07737.pdf. (last accessed June 5, 2026).
[32] *See* Federal Trade Commission, *Identity Theft.gov*, https://www.identitytheft.gov/Steps
[33] *See* "Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown," p. 2, U.S. Government Accountability Office, June 2007, https://www.gao.gov/new.items/d07737.pdf ("GAO Report"). (last accessed June 5, 2026).

26

CLASS ACTION COMPLAINT

115.   Sensitive Private Information can sell for as much as $363 per record according to the Infosec Institute.[34]

116.   An active and robust legitimate marketplace for Private Information also exists. In 2019, the data brokering industry was worth roughly $200 billion.[35]

117.   In fact, the data marketplace is so sophisticated that Plaintiff and Class Members can actually sell their non-public information directly to a data broker who in turn aggregates the information and provides it to marketers or app developers.[36,37]

118.   Consumers who agree to provide their web browsing history to the Nielsen Corporation can receive up to $50.00 a year.[38]

119.   As a result of the Data Breach, Plaintiff's and Class Members' Private Information, which has an inherent market value in both legitimate and dark markets, has been damaged and diminished by its compromise and unauthorized release. However, this transfer of value occurred without any consideration paid to Plaintiff or Class Members for their property, resulting in an economic loss. Moreover, the Private Information is now readily available, and the rarity of the Data has been lost, thereby causing additional loss of value.

120.   At all relevant times, Defendant knew, or reasonably should have known, of the importance of safeguarding the Private Information of Plaintiff and Class Members, and of the foreseeable consequences that would occur if Defendant's data

[34] *See, e.g.,* John T. Soma, et al, Corporate Privacy Trend: The "Value" of Personally Identifiable Information ("Private Information") Equals the "Value" of Financial Assets, 15 Rich. J.L. & Tech. 11, at *3-4 (2009) ("Private Information, which companies obtain at little cost, has quantifiable value that is rapidly reaching a level comparable to the value of traditional financial assets.") (citations omitted).

[35] *See* Ashiq Ja, *Hackers Selling Healthcare Data in the Black Market*, InfoSec (July 27, 2015), https://resources.infosecinstitute.com/topic/hackers-selling-healthcare-data-in-the-black-market/

[36]  https://www.latimes.com/business/story/2019-11-05/column-data-brokers(last accessed June 5, 2026).

[37] https://datacoup.com/(last accessed June 5, 2026).

[38] https://digi.me/what-is-digime/(last accessed June 5, 2026).

CLASS ACTION COMPLAINT

security system was breached, including, specifically, the significant costs that would be imposed on Plaintiff and Class Members as a result of a breach.

121. The fraudulent activity resulting from the Data Breach may not come to light for years.

122. Plaintiff and Class Members now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights. The Class is incurring and will continue to incur such damages in addition to any fraudulent use of their Private Information.

123. Defendant was, or should have been, fully aware of the unique type and the significant volume of data on Defendant's network, and, thus, the significant number of individuals who would be harmed by the exposure of the unencrypted data.

124. The injuries to Plaintiff and Class Members were directly and proximately caused by Defendant's failure to implement or maintain adequate data security measures for the Private Information of Plaintiff and Class Members.

**M. Future Cost of Credit and Identity Theft Monitoring is Reasonable and Necessary**

125. Given the type of targeted attack in this case, sophisticated criminal activity, the type of Private Information involved, and Plaintiff's Private Information likely already being disseminated on the dark web, there is a strong probability that entire batches of stolen information have been placed, or will be placed, on the black market/dark web for sale and purchase by criminals intending to utilize the Private Information for identity theft crimes –*e.g.*, opening bank accounts in the victims' names to make purchases or to launder money; file false tax returns; take out loans or lines of credit; or file false unemployment claims.

126. Such fraud may go undetected until debt collection calls commence months, or even years, later. An individual may not know that their Private Information was used to file for unemployment benefits until law enforcement notifies the

CLASS ACTION COMPLAINT

individual's employer of the suspected fraud. Fraudulent tax returns are typically discovered only when an individual's authentic tax return is rejected.

127. Consequently, Plaintiff and Class Members are at an increased risk of fraud and identity theft for many years into the future.

128. The retail cost of credit monitoring and identity theft monitoring can cost around $200 a year per Class Member. This is reasonable and necessary cost to monitor to protect Class Members from the risk of identity theft that arose from Defendant's Data Breach.

**N. Loss Of Benefit Of The Bargain**

129. Furthermore, Defendant's poor data security practices deprived Plaintiff and Class Members of the benefit of their bargain. When agreeing to directly or indirectly pay Defendant for services, Plaintiff and other reasonable Class Members understood and expected that they were, in part, paying for the services and necessary data security to protect the Private Information, when in fact, Defendant did not provide the expected data security. Accordingly, Plaintiff and Class Members received services that were of a lesser value than what they reasonably expected to receive under the bargains they struck with Defendant.

*Plaintiff's Experience*

130. Plaintiff is a current student at UEI.

131. Plaintiff provided her information to Defendant as a condition of enrollment and receiving Defendant's services.

132. Plaintiff is very careful about sharing her sensitive Private Information. Plaintiff never knowingly transmitted unencrypted sensitive Private Information over the internet or any other unsecured source.

133. Plaintiff first learned of the Data Breach after reading articles online.

134. Upon information and belief, Plaintiff's highly sensitive Private Information was exposed in the Data Breach.

135. As a result of the Data Breach, Plaintiff made reasonable efforts to

29

mitigate the impact of the Data Breach, including but not limited to researching the Data Breach, and reviewing credit reports, financial account statements, and/or medical records for any indications of actual or attempted identity theft or fraud.

136.   Plaintiff has spent significant time and will continue to spend valuable hours for the remainder of her life, that she otherwise would have spent on other activities, including but not limited to work and/or recreation.

137.   Plaintiff suffered actual injury from having her Private Information compromised as a result of the Data Breach including, but not limited to (a) damage to and diminution in the value of her Private Information, a form of property that Defendant maintained belonging to Plaintiff; (b) violation of her privacy rights; (c) the theft of her Private Information; and (d) present, imminent and impending injury arising from the increased risk of identity theft and fraud.

138.   As a result of the Data Breach, Plaintiff has also suffered emotional distress as a result of the release of her Private Information, which she believed would be protected from unauthorized access and disclosure, including anxiety about unauthorized parties viewing, selling, and/or using her Private Information for purposes of identity theft and fraud. Plaintiff is very concerned about identity theft and fraud, as well as the consequences of such identity theft and fraud resulting from the Data Breach.

139.   As a result of the Data Breach, Plaintiff anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach. In addition, Plaintiff will continue to be at present, imminent, and continued increased risk of identity theft and fraud for the remainder of her life.

## CLASS ACTION ALLEGATIONS

140.   Plaintiff brings this action, pursuant to Rule 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure on behalf of classes defined as:

**Nationwide Class**

All individuals residing in the United States whose Private Information was

CLASS ACTION COMPLAINT

accessed and/or acquired by an unauthorized party as a result of the Data Breach (the "Class").

**California Subclass**
All individuals residing in the State of California whose Private Information was accessed and/or acquired by an unauthorized party as a result of the Data Breach (the "California Subclass").

141. The Nationwide Class and the California Subclass are collectively referred to as the "Classes".

142. Excluded from the Classes are Defendant's officers, directors, and employees; any entity in which Defendant has a controlling interest; and the affiliates, legal representatives, attorneys, successors, heirs, and assigns of Defendant. Excluded also from the Classes are members of the judiciary to whom this case is assigned, their families and Members of their staff.

143. Plaintiff reserves the right to amend or modify the Class definitions as this case progresses.

144. Numerosity. The Members of the Classes are so numerous that joinder of all of them is impracticable. While the exact number of affected individuals is unknown, upon information and belief, hundreds and possibly even thousands of individuals had their Private Information compromised in this data breach. The identities of Class Members are ascertainable through Defendant's records, Class Members' records, publication notice, self-identification, and other means.

145. Commonality. There are questions of law and fact common to the Classes, which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

      a.     if Defendant unlawfully used, maintained, lost, or disclosed Plaintiff's and Class Members' Private Information;

CLASS ACTION COMPLAINT

b.    if Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

c.    if Defendant's data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

d.    if Defendant's data security systems prior to and during the Data Breach were consistent with industry standards;

e.    if Defendant owed a duty to Class Members to safeguard their Private Information;

f.    if Defendant breached their duty to Class Members to safeguard their Private Information;

g.    if Defendant knew or should have known that their data security systems and monitoring processes were deficient;

h.    if Defendant should have discovered the Data Breach sooner;

i.    if Plaintiff and Class Members suffered legally cognizable damages as a result of Defendant's misconduct;

j.    if Defendant's conduct was negligent;

k.    if Defendant's breach implied contracts with Plaintiff and Class Members;

l.    if Defendant were unjustly enriched by unlawfully retaining a benefit conferred upon them by Plaintiff and Class Members;

m.    if Defendant failed to provide notice of the Data Breach in a timely manner, and;

n.    if Plaintiff and Class Members are entitled to damages, civil penalties, punitive damages, treble damages, and/or injunctive relief.

CLASS ACTION COMPLAINT

146.  Typicality. Plaintiff's claims are typical of those of other Class Members because Plaintiff's information, like that of every other Class Member, was compromised in the Data Breach.

147.  Adequacy of Representation. Plaintiff will fairly and adequately represent and protect the interests of the Members of the Class. Plaintiff's Counsel are competent and experienced in litigating class actions.

148.  Predominance. Defendant has engaged in a common course of conduct toward Plaintiff and Class Members, in that all the Plaintiff's and Class Members' data was stored on the same computer system and unlawfully accessed in the same way. The common issues arising from Defendant's conduct affecting Class Members set out above predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

149.  Superiority. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a class action, most Class Members would likely find that the cost of litigating their individual claims is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for Defendant. In contrast, the conduct of this action as a Class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class Member.

150.  Defendant has acted on grounds that apply generally to the Class as a whole, so that Class certification, injunctive relief, and corresponding declaratory relief are appropriate on a Class-wide basis.

151.  Likewise, particular issues are appropriate for certification because such

CLASS ACTION COMPLAINT

claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

    a.    if Defendant failed to timely notify the public of the Data Breach;

    b.    if Defendant owed a legal duty to Plaintiff and the Class to exercise due care in collecting, storing, and safeguarding their Private Information;

    c.    if Defendant's security measures to protect their data systems were reasonable in light of best practices recommended by data security experts;

    d.    if Defendant's failure to institute adequate protective security measures amounted to negligence;

    e.    if Defendant failed to take commercially reasonable steps to safeguard consumer Private Information; and

    f.    if adherence to FTC data security recommendations, and measures recommended by data security experts would have reasonably prevented the Data Breach.

152.    Finally, all members of the proposed Class are readily ascertainable. Defendant has access to Class Members' names and addresses affected by the Data Breach.

**<u>FIRST CAUSE OF ACTION</u>**
**Negligence/Negligence per se**
**(On Behalf of Plaintiff and the Nationwide Class)**

153.    Plaintiff repeats and re-alleges paragraphs 1 through 152 of this Complaint and incorporates them by reference herein.

154.    Plaintiff and the Class entrusted Defendant with their Private Information on the premise and with the understanding that Defendant would safeguard their information, use their Private Information for business purposes only, and/or not

CLASS ACTION COMPLAINT

disclose their Private Information to unauthorized third parties.

155. Defendant has full knowledge of the sensitivity of the Private Information and the types of harm that Plaintiff and the Class could and would suffer if the Private Information were wrongfully disclosed.

156. By collecting and storing this data in their computer system and network, and sharing it and using it for commercial gain, Defendant owed a duty of care to use reasonable means to secure and safeguard their computer system—and Class Members' Private Information held within it—to prevent disclosure of the information, and to safeguard the information from theft. Defendant's duty included a responsibility to implement processes by which it could detect a breach of their security systems in a reasonably expeditious period of time and to give prompt notice to those affected in the case of a data breach.

157. Defendant owed a duty of care to Plaintiff and Class Members to provide data security consistent with industry standards and other requirements discussed herein, and to ensure that their systems and networks, and the personnel responsible for them, adequately protected the Private Information.

158. Defendant's duty of care to use reasonable security measures arose as a result of the special relationship that existed between Defendant and individuals who entrusted them with Private Information, which is recognized by laws and regulations, as well as common law. Defendant was in a superior position to ensure that their systems were sufficient to protect against the foreseeable risk of harm to Class Members from a data breach.

159. Defendant's duty to use reasonable security measures required Defendant to reasonably protect confidential data from any intentional or unintentional use or disclosure.

160. In addition, Defendant had a duty to employ reasonable security measures under Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, which prohibits

35

"unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect confidential data.

161. Defendant's duty to use reasonable care in protecting confidential data arose not only as a result of the statutes and regulations described above, but also because Defendant are bound by industry standards to protect confidential Private Information.

162. Defendant breached its duties, and thus was negligent, by failing to use reasonable measures to protect Class Members' Private Information. The specific negligent acts and omissions committed by Defendant include, but are not limited to, the following:

      a.    failing to adopt, implement, and maintain adequate security measures to safeguard Class Members' Private Information;

      b.    failing to adequately monitor the security of their networks and systems;

      d.    failing to have in place mitigation policies and procedures;

      e.    allowing unauthorized access to Class Members' Private Information;

      f.    failing to detect in a timely manner that Class Members' Private Information had been compromised; and

      g.    failing to timely notify Class Members about the Data Breach so that they could take appropriate steps to mitigate the potential for identity theft and other damages.

163. Defendant owed to Plaintiff and Class Members a duty to notify them within a reasonable timeframe of any breach to the security of their Private Information. Defendant also owed a duty to timely and accurately disclose to Plaintiff and Class Members the scope, nature, and occurrence of the data breach. This duty

36

CLASS ACTION COMPLAINT

is required and necessary for Plaintiff and Class Members to take appropriate measures to protect their Private Information, to be vigilant in the face of an increased risk of harm, and to take other necessary steps to mitigate the harm caused by the data breach.

164. Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to, *e.g.,* (i) strengthen their data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) continue to provide adequate credit monitoring to all Class Members.

165. Defendant breached its duties to Plaintiff and Class Members by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiff's and Class Members' Private Information.

166. Defendant owed these duties to Plaintiff and Class Members because they are members of a well-defined, foreseeable, and probable class of individuals whom Defendant knew or should have known would suffer injury-in-fact from Defendant's inadequate security protocols. Defendant actively sought and obtained Plaintiff's and Class Members' Private Information.

167. The risk that unauthorized persons would attempt to gain access to the Private Information and misuse it was foreseeable. Given that Defendant holds vast amounts of Private Information, it was inevitable that unauthorized individuals would attempt to access Defendant's databases containing the Private Information—whether by malware or otherwise.

168. Private Information is highly valuable, and Defendant knew, or should have known, the risk in obtaining, using, handling, emailing, and storing the Private Information of Plaintiff and Class Members and the importance of exercising reasonable care in handling it.

169. Defendant breached its duties by failing to exercise reasonable care in supervising their agents, contractors, vendors, and suppliers, and in handling and

CLASS ACTION COMPLAINT

securing the Private Information of Plaintiff and Class Members—which actually and proximately caused the Data Breach and injured Plaintiff and Class Members.

170. Defendant further breached its duties by failing to provide reasonably timely notice of the data breach to Plaintiff and Class Members, which actually and proximately caused and exacerbated the harm from the data breach and Plaintiff and Class Members' injuries-in-fact. As a direct and traceable result of Defendant's negligence and/or negligent supervision, Plaintiff and Class Members have suffered or will suffer damages, including monetary damages, increased risk of future harm, embarrassment, humiliation, frustration, and emotional distress.

171. Defendant's breach of its common-law duties to exercise reasonable care and their failures and negligence actually and proximately caused Plaintiff and Class Members actual, tangible, injury-in-fact and damages, including, without limitation, the theft of their Private Information by criminals, improper disclosure of their Private Information, lost benefit of their bargain, lost value of their Private Information, and lost time and money incurred to mitigate and remediate the effects of the data breach that resulted from and were caused by Defendant's negligence, which injury-in-fact and damages are ongoing, imminent, immediate, and which they continue to face.

## SECOND CAUSE OF ACTION
### Breach of Implied Contract
**(On behalf of the Plaintiff and the Nationwide Class)**

172. Plaintiff hereby repeats and realleges paragraphs 1 through 152 of this Complaint and incorporates them by reference herein.

173. Plaintiff and the Class entrusted their Private Information to Defendant in connection with the services Defendant provides. In so doing, Plaintiff and the Class entered into implied contracts with Defendant by which Defendant agreed to safeguard and protect such information, to keep such information secure and confidential, and to timely and accurately notify Plaintiff and the Class if their data had been breached and

CLASS ACTION COMPLAINT

compromised or stolen.

174. At the time Defendant acquired the Private Information of Plaintiff and the Class, there was a meeting of the minds and a mutual understanding that Defendant would safeguard the Private Information and not take unjustified risks when storing the Private Information, including as reflected in their privacy policy disclosures.

175. Implicit in the agreements between Plaintiff and Class Members and Defendant to provide Private Information, was the latter's obligation to: (a) use such Private Information for business purposes only, (b) take reasonable steps to safeguard that Private Information, (c) prevent unauthorized disclosures of the Private Information, (d) provide Plaintiff and Class Members with prompt and sufficient notice of any and all unauthorized access and/or theft of their Private Information, (e) reasonably safeguard and protect the Private Information of Plaintiff and Class Members from unauthorized disclosure or uses, and (f) retain the Private Information only under conditions that kept such information secure and confidential.

176. Plaintiff and the Class would not have entrusted their Private Information to Defendant had they known that Defendant would make the Private Information internet-accessible, not encrypt sensitive data elements, and not delete the Private Information that Defendant no longer had a reasonable need to maintain.

177. Plaintiff and the Class fully performed their obligations under the implied contracts with Defendant.

178. Defendant breached the implied contracts they made with Plaintiff and the Class by failing to safeguard and protect their personal information, by failing to delete the information of Plaintiff and the Class once the relationship ended, and by failing to provide timely and accurate notice to them that personal information was compromised as a result of the Data Breach.

179. As a direct and proximate result of Defendant's above-described breach of implied contract, Plaintiff and the Class have suffered (and will continue to suffer)

CLASS ACTION COMPLAINT

ongoing, imminent, and impending threat of identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; actual identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; loss of the confidentiality of the stolen confidential data; the illegal sale of the compromised data on the dark web; expenses and/or time spent on credit monitoring and identity theft insurance; time spent scrutinizing bank statements, credit card statements, and credit reports; expenses and/or time spent initiating fraud alerts, decreased credit scores and ratings; lost work time; and other economic and non-economic harm.

180.    As a direct and proximate result of Defendant's above-described breach of implied contract, Plaintiff and the Class are entitled to recover actual, consequential, and nominal damages to be determined at trial.

### THIRD CAUSE OF ACTION
### Invasion of Privacy
### (On behalf of the Plaintiff and the Nationwide Class)

181.    Plaintiff repeats and re-alleges paragraphs 1 through 152 of this Complaint and incorporates them by reference herein.

182.    Plaintiff and Class Members had a legitimate expectation of privacy regarding their Private Information and were accordingly entitled to the protection of this information against disclosure to unauthorized third parties.

183.    Defendant owed a duty to Plaintiff and Class Member to keep their Private Information confidential.

184.    The unauthorized disclosure and/or acquisition (*i.e.,* theft) by a third party of Plaintiff's and Class Members' Private Information is highly offensive to a reasonable person.

185.    Defendant's reckless and negligent failure to protect Plaintiff's and Class Members' Private Information constitutes an intentional interference with Plaintiff's and the Class Members' interest in solitude or seclusion, either as to their person or as

CLASS ACTION COMPLAINT

to their private affairs or concerns, of a kind that would be highly offensive to a reasonable person.

186. Defendant's failure to protect Plaintiff's and Class Members' Private Information acted with a knowing state of mind when it permitted the Data Breach because it knew its information security practices were inadequate.

187. Defendant knowingly did not notify Plaintiff and Class Members in a timely fashion about the Data Breach.

188. Because Defendant failed to properly safeguard Plaintiff's and Class Members' Private Information, Defendant had notice and knew that its inadequate cybersecurity practices would cause injury to Plaintiff and the Class.

189. As a proximate result of Defendant's acts and omissions, the private and sensitive Private Information of Plaintiff and the Class Members was stolen by a third party and is now available for disclosure and redisclosure without authorization, causing Plaintiff and the Class to suffer damages.

190. Defendant's wrongful conduct will continue to cause great and irreparable injury to Plaintiff and the Class since their Private Information is still maintained by Defendant with their inadequate cybersecurity system and policies.

191. Plaintiff and Class Members have no adequate remedy at law for the injuries relating to Defendant's continued possession of their sensitive and confidential records. A judgment for monetary damages will not end Defendant's inability to safeguard the Private Information of Plaintiff and the Class.

192. Plaintiff, on behalf of themselves and Class Members, seeks injunctive relief to enjoin Defendant from further intruding into the privacy and confidentiality of Plaintiff's and Class Members' Private Information.

193. Plaintiff, on behalf of herself and Class Members, seeks compensatory damages for Defendant's invasion of privacy, which includes the value of the privacy interest invaded by Defendant, the costs of future monitoring of their credit history for

CLASS ACTION COMPLAINT

identity theft and fraud, plus prejudgment interest, and costs.

## FOURTH CAUSE OF ACTION
### Breach of Fiduciary Duty
### (On Behalf of Plaintiff and the Nationwide Class)

194.   Plaintiff repeats and re-alleges paragraphs 1 through 152 of this Complaint and incorporates them by reference herein.

195.   In providing their Private Information, to Defendant, Plaintiff and Class members justifiably placed a special confidence in Defendant to act in good faith and with due regard to interests of Plaintiff and class members to safeguard and keep confidential that Private Information.

196.   Defendant accepted the special confidence Plaintiff and Class members placed in it, as evidenced by its assertion that it is committed to protecting the privacy of Plaintiff' and Class Members' personal information as detailed in its Privacy Policy.[39].

197.   In light of the special relationship between Defendant and Plaintiff and Class members, whereby Defendant became a guardian of Plaintiff' and Class members' Private Information, Defendant became a fiduciary by its undertaking and guardianship of the Private Information, to act primarily for the benefit of Plaintiff and Class members, for the safeguarding of Plaintiff's and Class members' Private Information.

198.   Defendant has a fiduciary duty to act for the benefit of Plaintiff and Class members upon matters within the scope of its relationship with Plaintiff and Class members, to keep secure the Private Information of Plaintiff and Class members.

199.   Defendant breached its fiduciary duties to Plaintiff and Class members by failing to protect the integrity of the systems containing Plaintiff's and Class members' Private Information.

---

[39] https://www.uei.edu/privacy-policy-terms/#4 (last accessed June 5, 2026)

CLASS ACTION COMPLAINT

200. Defendant breached its fiduciary duties to Plaintiff and class members by otherwise failing to safeguard Plaintiff's and Class members' Private Information.

201. As a direct and proximate result of Defendant's breaches of its fiduciary duties, Plaintiff and class members have suffered and will suffer injury, including but not limited to: (i) invasion of privacy; (ii) lost or diminished value of Private Information; (iii) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (iv) loss of benefit of the bargain; and (v) the continued and certainly increased risk to their Private Information, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information.

202. As a direct and proximate result of Defendant's breaches of its fiduciary duties, Plaintiff and Class members have suffered and will continue to suffer other forms of injury and/or harm, and other economic and non-economic losses.

**FIFTH CAUSE OF ACTION**
**Violation of the California Unfair Competition Law**
**[Cal. Bus. & Prof. Code § 17200, et seq. – Unlawful Business Practices]**
**(On Behalf of Plaintiff and the California Subclass)**

203. Plaintiff repeats and re-alleges paragraphs 1 though 152 of this Complaint and incorporates them by reference herein.

204. Plaintiff brings this count on behalf of the California Subclass. For purposes of this count, Plaintiff will refer to the California Subclass as the "Class" or "California Subclass".

205. Defendant violated Cal. Bus. and Prof. Code § 17200, et seq., by engaging in unlawful, unfair or fraudulent business acts and practices and unfair, deceptive, untrue or misleading advertising that constitute acts of "unfair competition" as defined in Cal. Bus. Prof. Code § 17200 with respect to the services provided to the Class.

CLASS ACTION COMPLAINT

206. Defendant engaged in unlawful acts and practices with respect to the services by establishing the sub-standard security practices and procedures described herein; by soliciting and collecting Plaintiff's and Class Members' Private Information with knowledge that the information would not be adequately protected; and by storing Plaintiff's and Class Members' Personal Information in an unsecure electronic environment in violation of California's data breach statute, Cal. Civ. Code § 1798.81.5, which requires Defendant to take reasonable methods for safeguarding the Private Information of Plaintiff and the Class Members.

207. In addition, Defendant engaged in unlawful acts and practices by failing to disclose the Data Breach in a timely and accurate manner, contrary to the duties imposed by Cal. Civ. Code § 1798.82.

208. As a direct and proximate result of Defendant's unlawful practices and acts, Plaintiff and Class Members were injured and lost money or property, including but not limited to the price received by Defendant for the services, the loss of Plaintiff's and Class Members' legally protected interest in the confidentiality and privacy of their Personal Information, nominal damages, and additional losses as described herein.

209. Defendant knew or should have known that its computer systems and data security practices were inadequate to safeguard Plaintiff's and Class Members' Private Information and that the risk of a data breach or theft was highly likely. Defendant's actions in engaging in the above-named unlawful practices and acts were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of Plaintiff and Class Members.

210. Plaintiff, on behalf of the Class, seeks relief under Cal. Bus. & Prof. Code § 17200, et seq., including, but not limited to, restitution to Plaintiff and Class Members of money or property that Defendant may have acquired by means of its unlawful, and unfair business practices, disgorgement of all profits accruing to Defendant because of

CLASS ACTION COMPLAINT

its unlawful and unfair business practices, declaratory relief, attorneys' fees and costs (pursuant to Cal. Code Civ. Proc. § 1021.5), and injunctive or other equitable relief.

## SIXTH CAUSE OF ACTION
### Violations of the California Consumer Records Act
### Cal. Civ. Code § 1798.80, *et seq*.
### (On Behalf of Plaintiff and the California Subclass)

211.    Plaintiff repeats and re-alleges paragraphs 1 though 152 of this Complaint and incorporates them by reference herein.

212.    Plaintiff brings this count on behalf of the California Subclass. For purposes of this count, Plaintiff will refer to the California Subclass as the "Class" or "California Subclass".

213.    Under the California Consumer Records Act, any "person or business that conducts business in California, and that owns or licenses computerized data that includes personal information" must "disclose any breach of the system following discovery or notification of the breach in the security of the data to any resident of California whose unencrypted personal information was, or is reasonably believes to have been, acquired by an unauthorized person." Cal. Civ. Code § 1798.82. The disclosure must "be made in the most expedient time possible and without unreasonable delay" but disclosure must occur "immediately following discovery [of the breach], if the personal information was, or is reasonable believes to have been, acquired by an unauthorized person." *Id.* (emphasis added).

214.    The Data Breach constitutes a "breach of the security system" of Defendant.

215.    An unauthorized person acquired the personal, unencrypted information of Plaintiff and the Class.

216.    Defendant knew that an unauthorized person had acquired the personal, unencrypted information of Plaintiff and the Class but to date, has failed to provide any notice. Given the severity of the Data Breach, this failure is unreasonable.

CLASS ACTION COMPLAINT

217.   Defendant's failure to notify Plaintiff and the Class prevents them from taking appropriate measures from protecting themselves against harm.

218.   Because Plaintiff and the Class were unable to protect themselves, they suffered incrementally increased damages that they would not have suffered with timely notice.

219.   Plaintiff and the class are entitled to equitable relief and damages in an amount to be determined at trial.

**SEVENTH CAUSE OF ACTION**
**Violations of the California Consumer Privacy Act ("CCPA")**
**Cal. Civ. Code § 1798.150**
**(On behalf of Plaintiff and the California Subclass)**

220.   Plaintiff repeats and re-alleges paragraphs 1 though 152 of this Complaint and incorporates them by reference herein.

221.   Plaintiff brings this count on behalf of the California Subclass. For purposes of this count, Plaintiff will refer to the California Subclass as the "Class" or "California Subclass".

222.   Defendant violated California Civil Code § 1798.150 of the CCPA by failing to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the nonencrypted Private Information of Plaintiff and the Class. As a direct and proximate result, Plaintiff's and the Class's nonencrypted and nonredacted Private Information was subject to unauthorized access and exfiltration, theft, or disclosure.

223.   Defendant is a "business" under the meaning of Civil Code § 1798.140 because Defendant is a "corporation, association, or other legal entity that is organized or operated for the profit or financial benefit of its shareholders or other owners" that "collects consumers' personal information" and is active "in the State of California" and "had annual gross revenues in excess of twenty-five million dollars ($25,000,000) in the preceding calendar year." Civil Code § 1798.140(d).

CLASS ACTION COMPLAINT

224. Plaintiff and Class Members seek injunctive or other equitable relief to ensure Defendant hereinafter adequately safeguards Private Information by implementing reasonable security procedures and practices. Such relief is particularly important because Defendant continues to hold Private Information, including Plaintiff's and Class members' Private Information. Plaintiff and Class members have an interest in ensuring that their Private Information is reasonably protected, and Defendant has demonstrated a pattern of failing to adequately safeguard this information.

225. Pursuant to California Civil Code § 1798.150(b), Plaintiff mailed a CCPA notice letter to Defendant's registered service agents, detailing the specific provisions of the CCPA that Defendant has violated and continues to violate. If Defendant cannot cure within 30 days—and Plaintiff believes such cure is not possible under these facts and circumstances—then Plaintiff intends to promptly amend this Complaint to seek statutory damages as permitted by the CCPA.

226. As described herein, an actual controversy has arisen and now exists as to whether Defendant implemented and maintained reasonable security procedures and practices appropriate to the nature of the information so as to protect the personal information under the CCPA.

227. A judicial determination of this issue is necessary and appropriate at this time under the circumstances to prevent further data breaches by Defendant.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, on behalf of himself and Class Members, requests judgment against Defendant and that the Court grant the following:

A. For an Order certifying the Class, and appointing Plaintiff and her Counsel to represent the Class;

47

CLASS ACTION COMPLAINT

B.   For equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of the Private Information of Plaintiff and Class Members;

C.   For injunctive relief requested by Plaintiff, including but not limited to, injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and Class Members, including but not limited to an order;

    i.   prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

    ii.   requiring Defendant to protect, including through encryption, all data collected through the course of its business in accordance with all applicable regulations, industry standards, and federal, state or local laws;

    iii.   requiring Defendant to delete, destroy, and purge the personal identifying information of Plaintiff and Class Members unless Defendant can provide to the Court reasonable justification for the retention and use of such information when weighed against the privacy interests of Plaintiff and Class Members;

    iv.   requiring Defendant to provide out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their Private Information for Plaintiff's and Class Members' respective lifetimes;

    v.   requiring Defendant to implement and maintain a comprehensive Information Security Program designed to protect the confidentiality and integrity of the Private Information of Plaintiff and Class Members;

CLASS ACTION COMPLAINT

vi.   prohibiting Defendant from maintaining the Private Information of Plaintiff and Class Members on a cloud-based database;

vii.   requiring Defendant to engage independent third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis, and ordering Defendant to promptly correct any problems or issues detected by such third-party security auditors;

viii.   requiring Defendant to engage independent third-party security auditors and internal personnel to run automated security monitoring;

ix.   requiring Defendant to audit, test, and train its security personnel regarding any new or modified procedures;

x.   requiring Defendant to segment data by, among other things, creating firewalls and access controls so that if one area of Defendant's network is compromised, hackers cannot gain access to other portions of Defendant's systems;

xi.   requiring Defendant to conduct regular database scanning and securing checks;

xii.   requiring Defendant to establish an information security training program that includes at least annual information security training for all employees, with additional training to be provided as appropriate based upon the employees' respective responsibilities with handling personal identifying information, as well as protecting the personal identifying

CLASS ACTION COMPLAINT

information of Plaintiff and Class Members;

xiii.    requiring Defendant to routinely and continually conduct internal training and education, and on an annual basis to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach;

xiv.    requiring Defendant to implement a system of tests to assess its respective employees' knowledge of the education programs discussed in the preceding subparagraphs, as well as randomly and periodically testing employees' compliance with Defendant's policies, programs, and systems for protecting personal identifying information;

xv.    requiring Defendant to implement, maintain, regularly review, and revise as necessary a threat management program designed to appropriately monitor Defendant's information networks for threats, both internal and external, and assess whether monitoring tools are appropriately configured, tested, and updated;

xvi.    requiring Defendant to meaningfully educate all Class Members about the threats that they face as a result of the loss of their confidential personal identifying information to third parties, as well as the steps affected individuals must take to protect themselves; and

xvii.    requiring Defendant to implement logging and monitoring programs sufficient to track traffic to and from Defendant's servers; and for a period of 10 years, appointing a qualified and independent third-party assessor to conduct a SOC 2

50

CLASS ACTION COMPLAINT

Type 2 attestation on an annual basis to evaluate Defendant's compliance with the terms of the Court's final judgment, to provide such report to the Court and to counsel for the class, and to report any deficiencies with compliance of the Court's final judgment;

D.     For an award of damages, including actual, nominal, statutory, consequential, and punitive damages, as allowed by law in an amount to be determined;

E.     For an award of attorneys' fees, costs, and litigation expenses, as allowed by law;

F.     For prejudgment and post-judgement interest on all amounts awarded;

G.     Granting Plaintiff and the Class leave to amend this Complaint to conform to the evidence produced at trial; and

H.     Such other and further relief as this Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands that this matter be tried before a jury.

Dated: June 5, 2026                    Respectfully Submitted,

By: */s/ Scott Edelsberg*
       Scott Edelsberg
       CA Bar No. 330990
       scott@edelsberglaw.com
       **EDELSBERG LAW, P.A.**
       1925 Century Park East, Suite 1700
       Los Angeles, California 90067
       Telephone: 786-289-9469


       *Attorneys for Plaintiff and Proposed Class*

CLASS ACTION COMPLAINT